UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ROLANDO RICARDO RODNEY,

    Petitioner,

v.                                                    Case No: 5:24-cv-555-WFJ-PRL

SECRETARY, DEPARTMENT OF
CORRECTIONS,

    Respondent.

_____/

### ORDER

Before the Court is Petitioner Rolando R. Rodney's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 1). Respondent has filed a Response (Doc. 8) and an Appendix (Doc. 9). Mr. Rodney filed a Reply. (Doc. 12). Upon careful consideration, the Court denies the Petition.

### BACKGROUND

On December 28, 2018, Mr. Rodney was charged by information with robbery with a firearm and possession of a firearm with altered or removed serial number. (Doc. 9-1 at 33–34). On April 26, 2021, Mr. Rodney was charged by amended information with robbery with a firearm while masked and possession of a firearm with altered or removed serial number. (Doc. 9-1 a 98–99). A jury trial was held on April 30, 2021. The jury found Mr. Rodney guilty as charged on both counts and made specific findings that during the commission of the robbery he possessed a firearm and

actually wore a hood, mask, or other device that concealed his identity. (Doc. 9-1 at 149–51). On June 14, 2021, he was sentenced to 30 years in state prison with a 10-year minimum mandatory. (Doc. 9-1 at 191–98). Mr. Rodney appealed, and the Fifth District Court of Appeal of the State of Florida ("5th DCA") *per curiam* affirmed the judgment and sentence. (Doc. 9-1 at 968); *Rodney v. State*, 342 So. 3d 1713 (Fla. 5th DCA 2022). Mandate issued on July 14, 2022. *Id*. at 970.

On August 23, 2022, Mr. Rodney filed a motion for reduction or modification of sentence under Rule 3.800(c), Fla. R. Crim. P. (Doc. 9-1 at 1553–56). On September 9, 2022, the trial court denied the motion. *Id*. at 1558.

On March 17, 2023, Mr. Rodney filed a motion for postconviction relief under Rule 3.850, Fla. R. Crim. P, (Doc. 9-1 at 984–1009), and a memorandum of law (*Id*. at 1012–20). On July 6, 2023, the trial court denied, in part Mr. Rodney's motion, and set an evidentiary hearing on one of the claims, and reserved ruling on the final claim. (Doc. 9-1 at 1062–1208). On September 21, 2023, the evidentiary hearing was held. (Doc. 9-1 at 1220–76). On January 2, 2024, the remaining claims of the Rule 3.850 motion were denied. (Doc. 9-1 at 1277–1397). Mr. Rodney appealed, and the Fifth DCA *per curiam* affirmed the trial court's order. (Doc. 9-1 at 1548–49); *Rodney v. State*, 392 So. 3d 832 (Fla. 5th DCA 2024). Mandate issued on September 24, 2024. *Id*. at 1551.

On October 3, 2024, Mr. Rodney filed his petition in this Court under 28 U.S.C. § 2254. (Doc. 1).

## II.    LEGAL STANDARDS

### A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. *See Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016), *abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't of Corr.*, 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" *Id*. (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "greatly circumscribed and highly deferential." *Id*. (internal quotation marks omitted) (quoting *Hill v. Humphrey*, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. *See Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

3

*Wilson v. Sellers*, 584 U.S. 122, 125 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. *Id*. at 125–26.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Richter*, 562 U.S. at 97–98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362, (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id*. at 413 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the

4

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." *See Burt v. Titlow*, 571 U.S. 12, 18 (2013); *accord Brumfield v. Cain*, 576 U.S. 305, 322 n.8 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Titlow*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

*Tharpe v. Warden*, 834 F.3d 1323, 1337 (11th Cir. 2016) (internal citations modified).

Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Titlow*, 571 U.S. at 19. "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" *Tharpe*, 834 F.3d at 1338 (quoting *Richter*, 562 U.S. at 102–03). This standard is "meant to be" a "difficult" one to meet. *Richter*, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

**B. Ineffective Assistance of Trial Counsel**

"The Sixth Amendment guarantees criminal defendants the effective assistance

5

of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (per curiam) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003), and *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [*Strickland*,] 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

*Richter*, 562 U.S. at 104 (internal citations modified). The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the *Strickland* test before the other." *Ward v. Hall*, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part *Strickland* test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." *Id.* (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in *Strickland*: "If it is easier to

dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." *Richter*, 562 U.S. at 105. But "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied *Strickland's* deferential standard," then a federal court may not disturb a state-court decision denying the claim. *Richter*, 562 U.S. at 105.

*Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014) (internal citations modified). In other words, "[i]n addition to the deference to counsel's performance mandated by *Strickland*, the AEDPA adds another layer of deference—this one to a state court's decision—when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

## III.   ANALYSIS

### A. Ground One

Mr. Rodney states that trial counsel was ineffective for failing to investigate,

compare, and present his shoe and pants sizes. (Doc. 1 at 3–4). The individual that

robbed the Dollar General was described as wearing black pants, black jacket, black

shoes and a blue hat. *Id.* at 3. Law enforcement tracked the stolen money to the

residence of Keith Jackson. Pants and shoes matching the description were found in

Keith Jackson Jr.'s ("KJ") closet. *Id.* Mr. Rodney denies that those were his pants and

shoes and claims that they belonged to KJ. *Id.* Mr. Rodney claims that if trial counsel

had investigated his sizes, they could establish that those items were not his sizes. *Id.*

at 3–4.

Mr. Rodney raised this claim in his Rule 3.850 motion. (Doc. 9-1 at 997–99).

The trial court rejected this claim following the evidentiary hearing:

> Defendant asserts Mr. Ward provided ineffective assistance because he failed to investigate, compare, and present articles of clothing found at Mr. Jackson's residence. Defendant claims Mr. Ward failed to ask about Defendant's pants and shoe size for a comparison against the articles of clothing collected at Mr. Jackson's residence. On direct examination by the State, witness Jordyn Holzer, forensic crimes scene technician with the Marion County Sheriff's Office, testified that she collected a black Nike backpack containing currency, black tennis shoes, a pair of black pants with the belt still buckled, a Nissan key, two black gloves, one white glove, and one blue glove from Mr. Jackson's residence. *See*, Exhibit E, Tr. of Jury Trial, Day One at 110–132. Ms. Holzer testified that the black shoes in evidence are a men's size 11-1/2. *Id.* Along with the pants and black shoes is a white shoe which is a men's size 11. *Id.* The State inquired, "[s]o the black shoes located and the shoe in the closet are different sizes" and Ms. Holzer answered in the affirmative. *Id.* at 131. Defendant was located by law enforcement at Mr. Jackson's residence. During deliberations, the jury asked about Defendant's shoe and pant size. *See*, Exhibit F, Tr. of Jury Trial, Day Two, at 404–405.
>
> At the evidentiary hearing, Mr. Ward testified that he deposed Ms. Holzer and she stated that a black pair of Dickies pants had a 34" waist and a 34" inseam. *See*, Exhibit G, Tr. of Evidentiary Hearing at 19. Mr. Ward's strategy was to say Mr. Jackson was the individual involved and

8

not Defendant. *Id*. at 19-20. Mr. Jackson predeceased the trial and so evidence of Mr. Jackson's height and weight was discovered from a nonrelated booking photo and his driver's license. *Id*. Defendant's height was found on the Information and Mr. Ward stated that when he stood next to Defendant, he believed Defendant to be 6"3'. *Id*.

Mr. Ward explained there is a five-inch height difference between Mr. Jackson and Defendant. *Id*. at 21. An inseam of 34" concerned Mr. Ward because he is 6 feet tall with an inseam of 32 inches. *Id*. "So a 34-inch inseam would imply that the person that was wearing the pants was over 6 feet tall. So it wasn't my interest to try and introduce that information." *Id*. Defendant testified at trial and Mr. Ward inquired if the black pants and shoes belonged to Defendant to which Defendant answered in the negative. *Id*. at 22. Mr. Ward stated, "I didn't want to go into the sizes." *Id*.

The Court finds Mr. Ward's representation was reasonable as set forth under Strickland. Also under Strickland, Defendant has failed to establish how he was prejudiced. Ground two of Defendant's Motion lacks merit and is denied.

(Doc. 9-1 at 1278–80). Mr. Rodney appealed and the Fifth DCA affirmed the denial of this ground. (Doc. 9-1 at 1548–49).

The trial court's decision was not contrary to, or an unreasonable application of, clearly established law. First, the court identified *Strickland* as the ineffective assistance of counsel standard. (Doc. 9-1 at 1278). Next, the state court analyzed Mr. Rodney's claim to determine whether he suffered any prejudice due to his counsel's actions. *Id*. at 1279–80. At the conclusion of the evidentiary hearing, the trial court made the following findings:

Okay. All right. Based upon everything that I have reviewed and hearing Mr. Ward's testimony today, I do not find him to be ineffective. I do not think, Mr. Rodney, that you have presented sufficient evidence to support Mr. Ward being ineffective.

Had he investigated the shoe size and the pant size more thoroughly, it would likely have been harmful to you, and that is what he testified to. I was the judge who presided over the trial and I agree that

9

that would have been nothing but harmful to you under the circumstances.

I think Mr. Ward's trial strategy was more than reasonable, especially considering the facts of this case, and all of the other evidence that the jury had to consider against you. His trial strategy specifically related to not investigating the shoe and the pant size further was very reasonable to protect you under the circumstances.

I think based upon my memory of the trial, that Mr. Ward did everything he possibly could have to argue that Keith Jackson, Jr. was the person who committed the robbery. I don't know of anything more he could have done. And, like I said, had he investigated the shoe size and the pant size any more in depth, I do believe it would have probably convinced the jury even more of your guilt.

There was a lot of other evidence that was relied upon. This particular part of the evidence was a smart decision on Mr. Ward's part not to focus on it and to put the blame back on the state for not investigating more thoroughly. And that is exactly his job. I think pointing out that the phone was in the pocket and that the state didn't do any other further investigation into anything to identify who the pants belonged to was a very smart choice on his part.

So I'm gonna deny your motion. I do not find that you have established prejudice. In addition, to not showing that Mr. Ward was ineffective, you've not established any prejudice as a result of it, especially in light of the circumstances of the case.

(Doc. 9-1 at 1272–74). Thus, the state court correctly identified *Strickland* as the controlling law and properly applied it to Petitioner's ineffective assistance of counsel claim. *See Robinson v. Moore*, 300 F.3d 1320, 1343 (11th Cir. 2002) (holding that, "[i]t is well established that the Supreme Court's decision in *Strickland* is the controlling legal authority to be applied to ineffective assistance of counsel claims") (quotation omitted). Finally, because Mr. Rodney offers no evidence that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented," he has not met his burden of proving by clear and convincing

evidence that the state court's factual findings were incorrect. *See* 28 U.S.C. § 2254(d)(2), (e)(1). Accordingly, Ground One is denied.

### B. Ground Two

Mr. Rodney claims his trial counsel was ineffective for failing to investigate and present the nexus of the evidence during the State's motion in limine to exclude relevant evidence that supported his defense theory. (Doc. 1 at 4–6). Mr. Rodney claims that the robbery was committed by KJ. *Id.* at 4–5. In this case, the Dollar General robbery, a nine-millimeter Sig Sauer handgun with a scratched off serial number was found in the van used in the robbery. *Id.* Months after the Dollar General robbery, KJ was killed during the course of a home invasion robbery that he was committing. *Id.* at 5. KJ was using a "forty five sig sauer with a scratched off serial number." *Id.* The trial court denied trial counsel's attempt to introduce the home invasion and firearm introduced at trial to show that KJ committed the Dollar General robbery. *Id.* Mr. Rodney claims that trial counsel failed to investigate and present evidence that the guns used in the crimes were both simultaneously stolen from a detective's vehicle. *Id.*

Mr. Rodney raised this claim in his Rule 3.850 motion. (Doc. 9-1 at 991–96). The trial court summarily denied it:

> Defendant argues that his trial attorney, Jacques Ward ("Mr. Ward"), provided ineffective assistance of counsel because he failed to "investigate and present the nexus of the evidence during the State's Motion in Limine to exclude exculpatory evidence .... " *See*, Exhibit D, Motion for Postconviction Relief. According to Defendant, salient evidence was prohibited that showed Keith Jackson, Jr. had committed

11

a similar crime and possessed a similar firearm. More specifically, Defendant asserts (1) the firearms used here, and in Mr. Jackson's home invasion case were Sig Sauers with altered serial numbers; (2) both firearms were used in crimes where Mr. Jackson was a suspect; and (3) both firearms "were stolen arising from the same car burglary of a law enforcement officer." *Id.*

On April 16, 2021, the State filed a Motion in Limine asking the Court to prohibit any references to Mr. Jackson's character and prohibit the introduction of evidence of Mr. Jackson's possession of drugs and/or firearms. *See*, Exhibit E, State's Motion in Limine. Mr. Ward filed a Response in which he argued reverse Williams Rule evidence is appropriate and compared the current case to a case in which Mr. Jackson committed a home invasion and was killed by the victim in self-defense. *See*, Exhibit F, Defendant's Response to State's Motion for Order in Limine. At the hearing on the State's Motion in Limine, a discussion ensued pertaining to the evidence collected at Mr. Jackson's residence. Mr. Ward stated that Defendant was at Mr. Jackson's residence when law enforcement arrived after following a GPS-tracker located in the stolen money from Dollar General. *Id.* at 12.

> [MR. WARD:] They [Law Enforcement Officers] -- they -- they go into the [Mr. Jackson's] bedroom where the two black males have been located. They see the - I believe, the handle of a shotgun sticking out from under the bed. There's a rifle in the corner. There's a -- a handgun on the dresser.
>
> And what I'm getting at, Judge, is it's not just that -- I think what the State is suggesting is that it's two separate crimes. So if Keith Jackson, Jr. is running a -- a drug operation from his bedroom, and I believe the State is suggesting that's completely separate.
>
> …
>
> We're saying that the evidence is that he [Mr. Jackson] was a person of interest in the investigation. They decided, in light of all this information, to only go after Rolando Rodney. And, Judge, what happens is, is Mr. Camuccio had the case before Madam Prosecutor, and when he was aware of the defense, he specifically had the DNA from Mr. Keith Jackson, Jr. tested, because he said, okay, you're going to say this other guy did it and I'm going to exclude him. I'm going to do everything -- and to get evidence to show that he's not the person, that we got the right person.

And so what happens is, in my client's vehicle, they see clothing, but also in Keith Jackson, Jr. 's closet, there is clothing. So there's a pair of pants they believe that was worn in the robbery in Keith Jackson, Jr. 's bedroom. But in the back of Rolando Rodney's vehicle, there is like, you know, a jacket, a -- a hat, and they find a gun also. They test -- they believe that the hat and the gun that were found, supposedly, in Rolando Rodney's vehicle was used in the crime. They test it for DNA and it comes back. They say Rolando Rodney's DNA is on the hat and the gun. And then when they compare Keith Jackson, Jr.'s DNA to the hat and the gun, they say that we cannot necessarily include him or exclude him from this mixture.

…

The next part of the defense is, I think the State is trying to get us to not be able to present, is six months later there is a home invasion robbery [by Mr. Jackson] wherein Keith Jackson, Jr. is - is killed.

Now, Judge, there are similarities. There is the robber wore gloves. The robber had a mask. And, better yet, Judge, in the - in our case, they say inside this Nissan Quest that Rolando Rodney [Defendant] was driving, I believe they said to the left of the center console, they find a Sig Sauer handgun with the serial number that was scraped off that had been reported stolen in a Marion County case. Six months later, when Keith Jackson, Jr. is killed while committing a home invasion robbery. He is found deceased. Next to his hand is a Sig Sauer handgun with the serial number scraped off that had also been reported stolen in a Marion County case.

THE COURT: Not the same gun?

MR. WARD: Not the same gun –

THE COURT: Just –

MR. WARD: -- but the same circumstances.

THE COURT: -- same make and model and the same scratched off serial number?

13

MR. WARD: It was a Sig Sauer black handgun with the serial number scraped off. Yeah.

THE COURT: Okay.

MR. WARD: And it's -- it -- I'm arguing, Judge, that -- my motion, I -- I -- I had put arguments into it. I didn't know that the Court wanted us to repeat our arguments. That's why it's just -- at this point, it's -- I have where it says, where evidence tends in any way, even indirectly, to establish a reasonable doubt of a defendant's guilt, it is error to deny its admission.

*See*, Exhibit G, Tr. of Hr'ing at 7-12.

The State argued, "[t]hese two crimes are not so similar that you could argue it's the same modus operandi, which I think is pretty much what they're [Defense] alluding to." *Id*. at 22. The State explains

[t]hey're seven months apart. They're completely unrelated people involved. One is a very quick robbery with a firearm of a Dollar General, a single person takes -- we're assuming he took a van. The other is four people park both of their vehicles outside of a residence hidden in the woods. They all are masked up. They all have gloves on. They barge into this person's residence. There's a shootout. That's much different than a quick convenience store robbery.

*Id*. The Court agreed with the State and explained "[t]he marijuana and the guns and other evidence at Mr. Jackson's house, those are not coming in. That has no bearing on this case and the robbery of the Dollar General, except just to cast bad character evidence against Mr. Jackson." *Id*. at 27.

This Court finds Mr. Ward did sufficiently argue for the admittance of the evidence from Mr. Jackson's home invasion case. Mr. Ward explained that Mr. Jackson's gun was the same model, had the same scratched off serial number, and was reportedly stolen in a Marion County case. Under *Strickland*, Mr. Ward was not ineffective in his representation. Even if Mr. Ward had been allowed to present that both firearms were stolen out of a law enforcement officer's vehicle, and any evidence from Mr. Jackson's home invasion case, the outcome is unlikely to have been different. Defendant has failed to establish how he was prejudiced. Claim one of Defendant's Motion lacks merit and is denied.

14

(Doc. 9-1 at 1063–67). Mr. Rodney appealed and the Fifth DCA affirmed the denial of this ground. (Doc. 9-1 at 1548–49).

The state court's denial of this ground is not contrary to, nor an unreasonable application of, *Strickland*. The state court found the trial counsel did sufficiently argue for the admittance of the evidence from KJ's home invasion case and determined that even if it was presented, the outcome was unlikely to have been different. Accordingly, Ground Two is denied under § 2254(d).

## C. Ground Three

Mr. Rodney claims that the trial court denied his constitutional right to due process under the Sixth and Fourteenth Amendments by erroneously granting the State's motion in limine regarding the evidence of a home invasion robbery that KJ was involved in. (Doc. 1 at 6). On direct appeal, Mr. Rodney raised a version of this claim, arguing "[t]he proof the court excluded would have illustrated the validity of Appellant's theory of defense, and the ruling on the pretrial motion in limine amounted to an abuse of discretion and to reversible error." (Doc. 9-1 at 927–28). Specifically, Mr. Rodney claimed that the trial court erred by excluding "reverse *Williams* Rule" evidence.[1] *Id.* at 927–33. However, the appellate briefs exclusively cited Florida law, all his substantive arguments addressed state law, and did not raise or otherwise indicate that he intended to raise federal constitutional issues. *See Baldwin v.*

---

[1] Evidence of collateral crimes, wrongs, or acts committed by a suspect other than the accused may be admissible as reverse *Williams* Rule evidence to show the defendant's innocence by proof of the guilt of another. *McLin v. State*, 827 So. 2d 948 (Fla. 2002).

15

*Reese*, 541 U.S. 27, 32 (2004); *see also McNair v. Campbell*, 416 F.3d 1291, 1302–03 (11th Cir. 2005) (holding that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record'") (citations omitted)). The requirement of exhaustion mandates that the precise issues set forth in the federal petition must have been presented to the state courts. *Heath v. Jones*, 863 F.2d 815, 818 (11th Cir. 1989); Nothing in Mr. Rodney's appellate arguments would have alerted the state court to the presence of a federal claim about due process. Accordingly, this claim is unexhausted.

Alternately, Mr. Rodney predicated this claim on the assertion that the trial court misinterpreted and/or misapplied Florida law. As such, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S 62, 67–68 (1991). It is "a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005). In reviewing the evidentiary determination of a state trial judge, the federal court does not sit as a "'super' state Supreme Court." *Shaw v. Boney*, 695 F.2d 528, 530 (11th Cir. 1983). So, for the purpose of this case, even if the trial court and the appellate court got it wrong, it is not for a federal habeas court to review that determination. And that is true even though the petition is "couched in terms of … due process." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (citation omitted). Thus, this claim is not cognizable.

16

## IV. CONCLUSION

Accordingly, the Petition (Doc. 1) is **DENIED**. The Clerk will enter judgment for Respondents and against Mr. Rodney and **close** this case. The Court denies a certificate of appealability, as Mr. Rodney has not made a substantial showing of a denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). Because Mr. Rodney is not entitled to such a certificate, the Court will not grant in forma pauperis status for an appeal.

**DONE AND ORDERED** at Tampa, Florida, on July 6, 2026.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Pro Se Party
Counsel of Record